UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LAVON RAWLS,**

      **Plaintiff,**

v.     Case No:   **6:15-cv-755-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

# MEMORANDUM OF DECISION

Lavon Rawls (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB").  Doc. No. 1.  Claimant alleges an onset of disability as of July 20, 2010, primarily due to back pain, multiple surgeries, prostrate cancer, hiatal hernia, hypertension, nerve damage in right wrist, headaches, and weight loss.  R. 143, 150, 199.  Claimant is insured for DIB through December 31, 2015.  R. 25.  Claimant argues that the Administrative Law Judge (the "ALJ") erred by failing to demonstrate good cause, supported by substantial evidence for giving little weight to the opinions of Claimant's treating physician and a consultative examining physician.  Doc. No. 18 at 22-29.[1]  For the reasons that follow, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

---

[1] Claimant also argues that the ALJ erred by failing to articulate explicit reasons, supported by substantial evidence for finding Claimant's subjective statements not entirely credible.  Doc. No. 18 at 35-37. For the reasons set forth below, the ALJ's handling of the treating and consultative physicians' opinions are case dispositive.

**I.     THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

**II.     STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.  ANALYSIS.

At the center of this dispute are the medical opinions and treatment records from Claimant's primary treating physician, Dr. Nadine Wright, and a consultative examining physician, Dr. James Shea. Doc. No. 18 at 22-35; R. 545-742, 921-63, 972-87. Dr. Wright provided three medical opinions (R. 735-42, 947-48, 987), and Dr. Shea provided one medical opinion (R. 972-86). Drs. Wright and Shea are the only treating or examining physicians who provided medical opinions regarding Claimant's physical functional limitations. *See generally* R. 34-35 (ALJ discussing the medical opinion evidence). In short, Dr. Wright and Shea each offered detailed opinions (*see* R. 735-42, 972-86), and they both opined that Claimant has functional limitations, which would preclude even sedentary work. R. 735-42, 972-86.

In the decision, the ALJ noted that Claimant applied for a period of disability as well as DIB, and that Claimant is insured for benefits through December 31, 2015.  R. 23, 25.  At step-two, the ALJ found that Claimant has the following severe impairments:

> [P]rostate adenocarcinoma, status post radical prostatectomy, right lower quadrant hernia, degenerative disc disease of the cervical spine, mild degenerative changes of the thoracic spine, grade I-II retrolisthesis at L5-S1 with moderate pesudobulge, mild disc bulging at L4-5, small central herniated pulposus at L3-4, and moderate left paracentral herniated pulposus at L1-2.

R. 25.  Ultimately, the ALJ concluded that Claimant retains the residual functional capacity ("RFC") to perform a full range of light work.  R. 28.[2]  Thus, a step-five, because the ALJ found that Claimant could perform light work, Medical Vocational Rule 202.14 directed a finding of not disabled.  R. 36.

The ALJ discussed the medical, opinion, and objective testing evidence supporting the ALJ's conclusion that the Claimant can perform the full range of light work.  R. 30-35.  With respect to Dr. Wright's October 1, 2012 Multiple Impairment Questionnaire (R. 735-42), the ALJ states the following:

> As for the opinion evidence, the [ALJ] accords little weight to the multiple impairment questionnaire completed by [Dr. Wright] in October 2012, in which she stated that the claimant could sit for 0-1 hour and stand/walk for 0-1 hour in an 8 hour workday, could occasionally lift up to 5 pounds, could never carry up to 5 pounds, had marked limitations in grasping, using his fingers for fine manipulation, or using his arms for reaching, was incapable of performing even low stress jobs due to pain, would be absent from work more than three times per month, and could not push, pull, kneel, bend, stoop and had to avoid heights.  The physician, who noted that she first treated the claimant in March 2009 but later

---

[2] Light work is defined as: "[I]nvolving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

> stated that his symptoms and limitations existed since at least 2008 and that she started treating his medical conditions in 2008 is contradictory, particularly when combined with the fact that the claimant's alleged onset date is in 2010.
>
> Moreover, the progress notes fail to document complaints of back and neck pain until May 2012, as well as right hand numbness and weakness, which belie the assessments made as well as the claimant's subsequent examination results and treatment course. [citing R. 735-42]. [T]he [ALJ] also finds that the treating physician's statement regarding the claimant's drug and alcohol use is conclusory and contradicts the evidence throughout the record as well as his testimony regarding his ongoing alcohol abuse. In addition, the record contains contradictory statements regarding the claimant's denial of his cocaine use, which was noted in the record, and there is correspondence from this physician in from May 2013 indicating that she could not serve as the claimant's primary care physician due to [his] failure to disclose information about substance abuse/use. [citing R. 947-48, 987].

R. 34-35. Thus, the ALJ accords little weight to Dr. Wright's October 1, 2012 opinion for the following three (3) reasons: (1) Dr. Wright's statement that she began treating Claimant's medical condition in 2008 and that his limitations have existed since then is inconsistent with her statement that she first began treating Claimant in March of 2009; (2) Dr. Wright's treatment notes fail to document complaints of neck and back pain until 2012, "which belie [her opinion] as well as the claimant's subsequent examinations results and treatment course"; and (3) Dr. Wright's "statement regarding the claimant's drug and alcohol use is conclusory and contradicts the evidence throughout the record as well as his testimony regarding his ongoing alcohol use." R. 34.[3]

---

[3] Dr. Wright also provided a June 15, 2013 opinion, which detailed Claimant's treatment history and opined that Claimant's physical limitations prevented Claimant from working in 2011 and 2012. R. 947-48. Although the ALJ cites to Dr. Wright's June 15, 2013 opinion (R. 35), the ALJ does not state with particularity the weight given to it. R. 34-35. However, Claimant does not specifically argue that the ALJ erred by failing to state with particularity the weight given to Dr. Wright's June 15, 2013 opinion. Doc. No. 18 at 22-28. In addition, on September 12, 2013, Dr. Wright provided an opinion, stating that Claimant's "use of drugs and/or alcohol is a symptom of his condition, and/or is a form of self-medication," and Claimant's "disability is independent of any use." R. 987.

With respect to Dr. Shea's August 29, 2013 Multiple Impairment Questionnaire (R. 972-79) and consultative evaluation (R. 980-86), the ALJ states the following:

> The [ALJ] accords little weight to the multiple impairment questionnaire completed by [Dr. Shea] who evaluated the claimant on only one occasion in August 2013 in which he stated that the claimant had severely restricted cervical range of motion, significantly restricted lumbar range of motion, muscle weakness in the biceps and triceps on the left side, hamstring weakness, and anterior tibialis and extensor hallucis weakness based on the MRI findings. In addition, [Claimant] had radicular neck pain, mid back and low back pain, sleep deprivation, sleep apnea, bilateral ankle pain, and testicular pain. The physician stated that the claimant could not even perform less than sedentary work with occasional lifting and carrying of no more than 5 pounds, standing/walking for 1 hour and sitting for 1 hour total in an 8 hour workday, no pushing, pulling, kneeling, bending, stooping, and the need to avoid wetness, temperature extremes, humidity, and heights. It is unclear how the physician found the claimant's symptoms started in September 2010, which was prior to the time that the claimant's allegations of back and neck pain appeared in the record.
>
> The [ALJ] finds that [Dr. Shea's] assessment, which was based on his one-time only examination, is based on the claimant's subjective complaints and is not consistent with the record as a whole. Moreover, in his report, this physician indicated reduced cervical range of motion but normal bulk and tone in the upper extremities, which would not appear to support the range of motion observed, particularly when the orthopedist report indicates specific deficits in cervical range of motion at a time prior to the claimant's surgery in September 2012. [citing R. 972-79].

R. 35. Thus, the ALJ gave little weight to Dr. Wright's August 29, 2013 opinion for the following three (3) reasons: (1) it is unclear how Dr. Shea could opine that Claimant's symptoms began in September 2010, which is prior to the time the Claimant complained of back and neck pain; (2) Dr. Shea's opinion is based on Claimant's subjective complaints and it "is not consistent with the record as a whole"; and (3) Dr. Shea's finding of reduced cervical range of motion is inconsistent with his finding that Claimant has "normal bulk and tone in the upper extremities," especially

"when the orthopedist report indicates specific deficits in cervical range of motion at a time prior to the claimant's surgery in September 2012." R. 35 (citing R. 972-79).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In cases like this one, involving the ALJ's handling of such medical opinions, "substantial-evidence review . . . involves some intricacy." *Gaskin v. Commissioner of Social Security*, 533 F. App'x. 929, 931 (11th Cir. Aug. 14, 2013) (unpublished).[4] In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement constitutes an opinion, which requires the the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error).

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The Eleventh Circuit has held:

---

[4] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005) (unpublished) (quoting *Phillips* v. *Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). Thus, good cause exists to give a treating physician's opinion less than substantial weight where the ALJ demonstrates in the decision that the physician's opinion is not bolstered by the evidence in the record, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Id*.

While the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

**A. Dr. Wright.**

The ALJ's reasons for giving little weight to the opinion of Dr. Wright are not supported by substantial evidence. As set forth above, the ALJ's first reason for essentially rejecting Dr. Wright's October 1, 2012 opinion (R. 735-42) is that her opinion is internally inconsistent because it states that Dr. Wright began treating Claimant in March of 2009, but it also states that she began treating Claimant in 2008. R. 34.[5] Dr. Wright's opinion does state that she first treated Claimant

---

[5] The ALJ does not adopt any of the limitations included in Dr. Wright's opinion. *Compare* R. 28 and *supra* n.2 (the definition of light work) *with* R. 735-42, 947-48 (Dr. Wright's opinion). Thus, although the ALJ states that she gave Dr. Wright's opinion little weight, she essentially rejected it entirely.

on March 2, 2009 (R. 735) and it also states, inconsistently, that Dr. Wright "started treatment for [Claimant's] medical conditions in 2008" (R. 741).  However, as the ALJ correctly notes, Claimant alleges a disability onset date of July 20, 2010, and he is insured for benefits through December 31, 2015.  R. 23, 25.  Moreover, Claimant requested a period of disability as well as DIB.  R. 23, 25.  While the inconsistency noted by the ALJ is good cause to reject Dr. Wright's opinion at least for a certain time-period, it does not adequately explain why Dr. Wright's opinion should be rejected in its entirety.  For example, the record demonstrates: Claimant has a long history of progressively worsening cervical, thoracic, and lumbar pain, including radiculopathy into the upper and lower extremities (*see* R. 562-65, 667-70, 679, 681, 754, 947-48); on May 6, 2011, Dr. Wright first assessed lower back pain with right leg radiculopathy (R. 714); objective magnetic resonance images ("MRI") of the cervical, thoracic and lumbar spine, an electromyogram, and multiple x-rays in 2012 all document the conditions described in Dr. Wright's opinion (R. 545-46, 548-49, 555-56, 576-78); on December 5, 2012, Claimant underwent surgical fusion of C3-4, C4-5, and C5-6 of the cervical spine (R. 743); as of April 3, 2013, Claimant continued to have persistent pain (R. 760); and Claimant's orthopedic surgeon discussed a decompression or discectomy, but also reported that a decompression would not alleviate Claimant's lower back pain (R. 745-46).  On January 15, 2013, Dr. Wright provided a longitudinal description of Claimant's cervical, thoracic, and lumbar spine pain and accompanying treatment, and she further stated that Claimant "is currently disabled and has been so for all of 2012 and 2011."  R. 948.  However, the ALJ does not consider whether Dr. Wright's opinion supports a period of disability between 2011 and 2013.  R. 34-35.  Instead, the ALJ uses a seemingly inconsequential inconsistency in Dr. Wright's opinion to reject all of the functional limitations

contained therein. R. 34-35. On this record, the Court finds that the ALJ's first reason for rejecting Dr. Wright's opinion is not supported by substantial evidence.

The ALJ's second reason is that Dr. Wright's treatment notes fail to document complaints of neck and back pain until 2012. R. 34. To the contrary, Dr. Wright first assessed Claimant with lower lumbar pain with right leg radiculopathy on May 6, 2011. R. 714. Thus, the ALJ's second reason for rejecting Dr. Wright's opinion is not supported by substantial evidence.

The ALJ's third reason for rejecting Dr. Wright's opinion is unclear. The ALJ rejects Dr. Wright's October 1, 2012 opinion because her "statement regarding the claimant's drug and alcohol use is conclusory and contradicts the evidence throughout the record as well as his testimony regarding his ongoing alcohol use." R. 34. However, Dr. Wright's October 1, 2012 opinion does not contain any statement regarding alcohol or drug abuse. R. 735-42. Thus, nothing therein is conclusory or contradictory as to Claimant's drug use. R. 735-42. Dr. Wright's subsequent treatment notes reflect that she discontinued treating Claimant on May 9, 2013, because Claimant failed to disclose information related to drug abuse. R. 931-33. On September 12, 2013, after terminating Claimant as a patient, Dr. Wright stated that her opinion regarding Claimant's limitations is not related to Claimant's use of drugs or alcohol. R. 987. It is wholly unclear how Dr. Wright's May 9, 2013 decision to discontinue treating Claimant and her September 12, 2013, statement that Claimant's drug use is not related to his disability, undermine her October 1, 2012 opinion. Thus, the Court finds that the ALJ's third reason for rejecting Dr. Wright's opinion is not supported by substantial evidence. Accordingly, the ALJ failed to demonstrate good cause, supported by substantial evidence, for rejecting Dr. Wright's opinion.

Based on the ALJ's error with respect to Dr. Wright's opinion, the case must be reversed and remanded for further proceedings. Nevertheless, the Court will briefly address the ALJ's handling of Dr. Shea's opinion.

**B. Dr. Shea.**

Like Dr. Wright, although the ALJ stated she gave Dr. Shea's August 29, 2013 opinion little weight, the ALJ did not adopt any of the functional limitations contained in it and, therefore, the ALJ essentially rejected Dr. Shea's opinion. R. 35. The ALJ's first reason for rejecting Dr. Shea's opinion, *i.e.*, that it is unclear how Dr. Shea determined Claimant's symptoms began in September of 2010, is not supported by substantial evidence. As set forth above, the record contains numerous uncontroverted treatment notes stating that Claimant's cervical, thoracic, and lumbar pain symptoms have been progressively worsening for years (R. 562-65, 667-70, 679, 681, 754, 947-48). The ALJ's second reason for rejecting Dr. Shea's opinion is that it is based on Claimant's subjective complaints and is not consistent with the record as whole. R. 35. Dr. Shea's opinion unequivocally states that his opinions are supported by MRIs of the cervical, lumbar, and thoracic spine (R. 973). In addition, Dr. Shea's evaluation states he considered the following: Claimant's statements; various medical records; the December 5, 2012, cervical spine surgery report; the May 30, 2012, electromyogram; and MRIs. R. 980. Finally, Dr. Shea conducted a physical examination. R. 983-86. Thus, there is no evidence supporting the ALJ's statement that Dr. Shea relied solely on the Claimant subjective complaints. R. 35.[6]

---

[6] The ALJ's statement that Dr. Shea's opinion is inconsistent with the record as a whole is also conclusory. *See Anderson v. Astrue,* No. 3:12-cv-308-J-JRK, 2013 WL 593754, at *5 (M.D. Fla. Feb. 15, 2013) (statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion).

Finally, the ALJ rejects Dr. Shea's opinion because his findings of reduced cervical range of motion are inconsistent with Claimant's "normal bulk and tone in the upper extremities."  R. 35.  It is wholly unclear how a claimant's bulk or tone relates to the claimant's range of motion.  Thus, the ALJ's third reason for rejecting Dr. Shea's opinion is not supported by substantial evidence.

Based on the foregoing, the Commissioner's final decision is not supported by substantial evidence.[7]

## IV.  CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** the for further proceedings pursuant to sentence four of Section 405(g); and

2. The Clerk is directed to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE and ORDERED** in Orlando, Florida on August 15, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

[7] The ALJ's above-stated errors are dispositive of this case.  *See supra* pp. 3-11.  Therefore, it is unnecessary to address Claimant's remaining argument (*see supra* n.1).  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Social Sec. Admin*., -- F. App'x --, 2015 WL 5166045, at *3 (11th Cir. Sept. 4, 2015) (unpublished) (no need to analyze other issues when case must be reversed due to other dispositive errors).